UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RONALD D WILLARD,

     Petitioner,

v.                                                          Case No. 3:19cv124-LC-HTC

SECRETARY, FLORIDA DEPT
OF CORRECTIONS,

     Respondent.

_____/

<u>REPORT AND RECOMMENDATION</u>

     This matter is before the Court on Respondent's motion to dismiss Petitioner Ronald D. Willard's *pro se* petition for habeas corpus relief under 28 U.S.C. § 2254. ECF Doc. 22. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). Upon review of the petition (ECF Doc. 1), the motion to dismiss, and Petitioner's response (ECF Doc. 24), the undersigned recommends the motion to dismiss be GRANTED and the Petition be DISMISSED without an evidentiary hearing as UNTIMELY.

## I.    BACKGROUND

     Willard is an inmate of the Florida Department of Corrections, currently incarcerated at the New River Work Camp. The petition challenges an 11-year-old conviction and sentence from Okaloosa County (case number 2009-CF-0683) for

aggravated battery with a firearm, firing into an occupied vehicle, fleeing or eluding law enforcement, and two counts of aggravated assault with a firearm.

### A.    The Offense, Conviction, Sentence And Appeal

On March 17, 2009, Jason Ward reported to law enforcement that, Willard, a friend, had fired five shots at him while Ward was attempting to flee by car on March 17, 2009.  ECF Doc. 22-1 at 18 (arrest report).  One of the shots struck him in the shoulder, requiring hospitalization.  Later, officers saw Petitioner's car, and, when they attempted to stop it, a vehicle chase ensued.  Petitioner drove onto Eglin Air Force Base, stopped, abandoned his car, and fled on foot.  Air Force Security Forces personnel eventually encountered him, and a gun battle ensued between Willard and two Air Force Security Forces personnel, Gary King and Hector Barrios.  The battle ended when Petitioner was wounded and taken into custody.

Petitioner pled guilty pursuant to a written plea agreement.  ECF Doc. 21-1 at 45.  The agreement set out the charges as stated in the October 15 amended information[1] and specified that "Defendant is facing a mandatory minimum of 20 years.  Sentencing at the discretion of the court."  *Id.*  On November 23, 2009,

---

[1] On October 15, 2009, a second amended Information was entered on the docket which reduced the charge on Count 1 from attempted premeditated murder to aggravated battery (of Ward) with a deadly weapon (a pistol) or causing great bodily harm and that the weapon was discharged. Counts 2 and 3 remained the same, but in Counts 4 and 5, the attempted premeditated murder charge was reduced to aggravated assault (of King and Barrios, respectively) by threat with a firearm (a rifle) and that the firearm was discharged.  ECF Doc. 21-1 at 49.

Willard was sentenced to 20 years on Counts 1, 4 and 5 and to 15 years on Counts 2 and 3, all sentences to run concurrent to each other. *Id.* at 54.

Petitioner timely appealed (case number 1D10-126), but his appellate counsel filed a no-merits brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). ECF Doc. 22-3. Counsel successfully moved to allow Petitioner to file a *pro se* brief, but despite an extension of time, Petitioner did not do so. ECF Doc. 22-4. On December 2, 2011, the First District Court of Appeal affirmed *per curiam*, ECF Doc. 22-5 at 1, and the mandate issued on December 30, 2011. *Id.* at 3.

### B. Postconviction Proceedings – 3.800 Motions To Correct, Reduce, Or Modify The Sentence

On February 23, 2012, Willard filed a motion for reduction or modification of sentence pursuant to Fla. R. Crim. P. 3.800(c). ECF Doc. 22-6. The court denied the motion on the merits on March 23, 2012. *Id.* at 11.

On April 11, 2012, Willard filed his first motion to correct illegal sentence under Fla. R. Crim. P. 3.800(a), arguing he was entitled to an additional 13 days credit for time spent in jail awaiting trial. ECF Doc. 22-7. On March 22, 2013, the state court granted the motion and awarded him 13 additional days of presentence jail credit. ECF Doc. 22-7 at 12. Therefore, the clerk replaced the judgment's "Special Provisions" page with one titled "Amended Special Provisions," stamped

with the date "April 3, 2013," and provided that Willard was entitled to 252 rather than 239 days of jail credit.[2]  *Id.* at 21.

Willard did not appeal the amended judgment of April 3, 2013.  On May 29, 2013, Willard filed a second 3.800(a) motion, arguing that he was sentenced based on the wrong base crime because the judgment stated that Willard had been charged in Count 1 with a first-degree felony, while aggravated battery is actually a second-degree felony.  ECF Doc. 22-8 at 1.  The Court originally denied the motion, finding that because Willard admitted to discharging a firearm, the sentence he received was proper.  *Id.* at 7.

On July 26, 2013, however, the state court granted Willard's motion for rehearing -- continuing to deny any change in his sentence -- but this time directing the clerk to prepare an amended judgment and sentence "to reflect that the conviction on Count 1 in case 09-CF-0683 is a second-degree felony."  *Id.* at 17-18.  An amended judgment was entered July 30, 2013, correcting the language on the judgment from a first to second-degree felony for Count 1.  *Id.* at 19.  Willard's sentence was not changed in any way.

On August 18, 2013, Willard filed a third 3.800(a) motion, arguing that he was "not sentenced under 775.087 or any other sentence enhancement" and was thus

---

[2] The State incorrectly states that the Amended Judgment entered pursuant to Willard's first 3.800(a) motion was filed on April 13, 2013 when it was actually filed on April 3, 2013.  ECF Doc. 22-7 at 21 and state docket in 2009 CF 683, available at: https://clerkapps.okaloosaclerk.com/benchmarkweb2/Home.aspx/Search

subject only to second and third-degree felonies running concurrently. Therefore, his twenty-year sentence exceeded the statutory maximum. ECF Doc. 22-12 at 12. The state court denied the motion, noting that because he admitted to discharging the firearm during the aggravated assaults and aggravated battery, his sentence on those counts were properly enhanced under Fla. Stat. § 775.087(2)(a)2.[3] *Id.* at 18-19. Petitioner appealed, and the First DCA (case number 1D13-4851) affirmed *per curiam* without opinion and entered a mandate on April 3, 2014.[4] ECF Doc. 22-15 at 8.

In the meantime, on December 22, 2013, while the appeal of the third 3.800(a) ruling was pending, Willard delivered his first Fla. R. Crim. P. 3.850 motion to prison mail officials. ECF Doc. 22-16. The court, in an order signed April 24, 2014, but rendered on the docket April 25, 2014, initially found the motion facially insufficient, dismissed it, and required him to amend within sixty (60) days. *Id.* at

---

[3] Fla. Stat. § 775.087(2)(a)2 provides, "Any person who is convicted of a felony or an attempt to commit a felony listed in sub-subparagraphs (a)1.a.-p., regardless of whether the use of a weapon is an element of the felony, and during the course of the commission of the felony such person discharged a 'firearm' or 'destructive device' as defined in s. 790.001 shall be sentenced to a minimum term of imprisonment of 20 years."

[4] In his response, Willard asserts that he did not appeal the second 3.800(a) motion, ECF Doc. 24 at 21, while the State asserted that he did. ECF Doc. 22 at 5. The State appears to be in error. In its exhibits to ECF Doc. 22, the State attaches the appellate materials from First DCA case number 1D13-4851 for both the appeal of the second 3.800(a) motion and the third 3.800(a) motion. *Compare* ECF Docs. 22-9, 22-10 and 22-11 *with* ECF Docs. 22-13, 22-14 and 22-15. However, ECF Doc. 22-12, which contains the record on appeal of First DCA case number 1D13-4851, only refers to the third 3.800(a) motion and the September 6, 2013 order denying it. ECF Doc. 22-12 at 10, 18, and 27. Nothing in the docket of 1D13-4851 indicates an appeal of the denial of the second 3.800(a) motion was joined with the appeal of the third 3.800(a) motion's denial.

15.  Willard delivered his amended first 3.850 motion to prison officials on June 27, 2014 (63 days after the order was signed).  ECF Doc. 22-17 at 31.

After several preliminary rulings and evidentiary hearings, the state court denied all grounds of the amended first 3.850 motion on the merits.  ECF Doc. 22-18 at 61.  The court also set the matter for a hearing on timeliness and, on April 27, 2015, alternatively dismissed the amended first 3.850 motion as untimely.  *Id.* at 85. Rehearing was denied by the trial court on May 29, 2015.  *Id.* at 102.  Petitioner appealed on June 11, 2015 (First DCA case number 1D15-2725), and the First DCA affirmed *per curiam* on August 31, 2016.  The mandate was issued on November 10, 2016.  Petitioner filed a petition for writ with the Florida Supreme Court, which was denied certiorari for lack of jurisdiction on November 30, 2016.  ECF Doc. 22-23.

Petitioner also filed other collateral attacks while the amended first 3.850 was pending.  On December 29, 2013, Petitioner filed a petition for writ of habeas corpus with the First DCA alleging ineffective assistance of appellate counsel.  ECF Doc. 22-24 at 1.  The First DCA denied the petition on the merits on January 24, 2014, *id.* at 66, and denied a motion for rehearing on March 12, 2014.  *Id.* at 70.

On May 15, 2014, Willard filed his fourth 3.800(a) motion, arguing that he should be resentenced because, although the judgment had been corrected to describe Count 1 as charging a second-degree felony rather than a first-degree felony, the scoresheet had not been so amended.  ECF Doc. 22-25 at 11.  On July

29, 2014, the state court ordered the State to correct the scoresheet but denied Willard's request to be resentenced as "successive" and without merit. *Id.* at 19. Willard appealed (Case number 1D14-4659).

Before the appeal of the denial of his fourth 3.800(a) motion was resolved, Willard filed a fifth 3.800(a) motion to correct illegal sentence by delivering it to prison mail officials on October 7, 2014. ECF Doc. 22-26 at 16. In it, he argued he should be resentenced because the court did not orally pronounce the § 775.087(2)(a)2 enhancement to his sentence, *id.* at 19, and there is not a charge capable of supporting an un-enhanced 20-year sentence. *Id.* at 46. Initially, the court held the fifth 3.800(a) motion in abeyance because it raised issues closely related to the issues in the pending appeal of the denial of his fourth 3.800(a) motion. In response, Willard voluntarily dismissed the appeal of the fourth 3.800(a) motion on January 14, 2015. *Id.* at 58.

The court denied the fifth 3.800(a) motion on May 29, 2015 because it was clear that (1) Willard admitted a firearm was involved; (2) knew that he faced a 20-year mandatory minimum; (3) the judge does not have discretion to ignore the 20-year mandatory minimum in § 775.087(2)(a)2; and (4) the judge did, in fact, orally pronounce at sentencing that the enhancement and mandatory minimum applied to Willard. *Id.* at 45-49. Despite denying relief, the state court ordered the judgment be amended to include language about the firearm enhancement, so that it was consistent with his oral pronouncement of sentence. *Id.* at 48-49.

The clerk thus amended the judgment on June 2, 2015, by retitling the "Amended Special Provisions" page to "Second Amended Special Provisions"; stamping it with the date June 2, 2015; checking the blank next to "Firearm"; crossing out the choices for "10-year" and "life" minimum mandatory imprisonment; and emphasizing the "20-year" minimum mandatory imprisonment choice in bold type. ECF Doc. 22-27 at 7. This contrasts with the earlier judgments, which did not have check marks in the blank next to "Firearm" and did not choose from among "10-year", "20-year", and "life" options. *See, e.g.*, ECF Doc. 22-8 at 19. Willard was not resentenced, however, and his sentence was not in any way affected by the June 2, 2015 amendment to the judgment.

Willard appealed the denial of his fifth 3.800(a) motion (Case number 1D15-3220). *See* ECF Doc. 22-26 at 98. The First DCA affirmed *per curiam* on December 29, 2015, ECF Doc. 22-30 at 1, denied rehearing on February 4, 2016, *id.* at 4, and issued a mandate on February 22, 2016, *id.* at 6.

On December 29, 2016, Willard delivered to prison mail officials a "Second or Successive Motion for Post-Conviction Relief," based on newly discovered evidence involving the filing date of a certain traffic citation. ECF Doc. 22-31 at 44. The state court found the motion untimely, as the citation was not newly discovered evidence. Also, on the merits, the state court found that Willard knew the charges to which he pled guilty, regardless of when the citation was filed. Therefore, the

citation and how it was filed did not present "a manifest injustice necessitating withdrawal of Defendant's plea." ECF Doc. 22-31 at 112-13.

As discussed more fully in section III, below, beginning in 2016, Willard filed a flurry of other motions and appeals – so much so that he was admonished by the trial court and precluded by the First DCA from further filings unless they were signed by a licensed attorney, ECF Doc. 22-41 at 1. As discussed in detail in the Analysis section, each of these motions either (1) was dismissed as not properly filed or (2) did not attack the petitioner's conviction and sentence directly. Therefore, none of them tolled the AEDPA one-year time limit.

## III. Timeliness Under The Antiterrorism And Effective Death Penalty Act Of 1996 ("AEDPA"), Pub.L.No. 104–132, 110 Stat. 1214

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the AEDPA, a petition must be filed within one-year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[5] Additionally, the one-year time period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

---

[5] Although there are other "trigger" dates under the AEDPA, none of those apply here. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

The State has moved to dismiss the petition as untimely on the ground that it was filed more than two (2) years after February 22, 2016, the date when any properly filed post-conviction motion was fully resolved. Although Petitioner filed a myriad of other post-conviction motions, including two 3.850 motions, the State argues that none were sufficient to toll the AEDPA clock.

In his petition, Willard argues the petition is timely because (1) his judgment was amended in April 2013, July 2013, and again in June 2015; (2) he is making a jurisdictional argument, which cannot be time barred; and (3) the AEDPA does not apply to him because he is has not been sentenced to death. ECF Doc. 1 at 29. He makes similar arguments in his response to the motion to dismiss and adds the additional arguments that (1) the calculation of time limits are "in question due to circumstances beyond Petitioner's control and compounded by delays from the Respondent's office during state court proceedings," (ECF Doc. 24 at 1), and (2) Petitioner was diligent in pursuing his claims relating to Florida's jurisdiction over acts that occurred on Eglin Air Force base. *Id.* at 27. The undersigned construes these latter arguments as seeking equitable tolling.

As discussed below, the undersigned agrees with the State that the petition is untimely and finds Petitioner's arguments to be without merit.

### A.    The April 2013, June 2013 and July 2015 Judgments.

As an initial matter, to determine the "trigger date" under the AEDPA, the Court must first determine the date on which the Petitioner's judgment and sentence

became final.  Although Petitioner was initially sentenced on November 23, 2009, as stated above, on April 3, 2013, the state court amended Petitioner's judgment to credit Petitioner for thirteen (13) days of pretrial detention.  When a defendant is resentenced, and an amended judgment is entered, the AEDPA's one-year limitations period begins to run when the amended judgment becomes final. *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286, 1292–93 (11th Cir. 2007) (judgment entered after Petitioner was resentenced – and not the original judgment of conviction -- "controls the statute of limitations for this petition because the period begins to run when both the conviction *and* sentence are final") (emphasis in original).  There is no dispute that because the Petitioner's sentence was altered on April 3, 2013, the finality of that amended judgment re-starts the AEDPA clock.  *See id.*  That judgment became final thirty (30) days later, on **May 3, 2013**.  *See* Fla. R. App. P. 9.140(b)(3); *Gust v. State*, 535 So. 2d 642 (Fla. 1st DCA 1988) (if a defendant does not appeal the conviction or sentence, judgment becomes final when the 30-day period for filing a direct appeal expires).

Although the state court granted two additional 3.800 motions, neither the June 2013 nor July 2015 amended judgments, however, re-started the AEDPA clock because neither amended judgments altered Petitioner's sentence, but rather merely corrected clerical errors in the judgment.  *See United States v. Portillo,* 363 F.3d 1161 (11th Cir. 2004) (holding that correction of clerical error in restitution provision of criminal judgment did not restart appeal time); *see, e.g., United States*

*v. Greer,* 79 F. App'x. 974 (9th Cir. 2003) (unpublished) (amended judgment which merely corrected a clerical mistake in the original written judgment to clarify the terms of the sentence as orally pronounced at the sentencing hearing did not restart Section 2255's limitation period); *Young v. Tucker*, 2012 WL 1605893 at *3 n. 2 (N.D. Fla. 2012) ("other courts that have addressed this narrow issue appear to have uniformly held that when a court corrects a clerical error in a criminal judgment, the AEDPA's one-year limitations period does not begin anew when the court corrects the clerical error").

Moreover, even if those amended judgments were sufficient to restart the AEDPA clock, the petition would nonetheless be untimely because the July 2015 amended judgment became final on February 22, 2016, when the First DCA issued its mandate affirming the judgment, and as discussed below, there were no properly filed post-conviction motions pending or filed after February 22, 2016, which would have tolled the AEDPA clock.  ECF Doc. 22-30 at 4.  The instant federal petition, however, was not filed until almost three (3) years later in January 2019. and, as discussed below, there were no "properly filed" post-conviction motions filed or pending *after* February 22, 2016, which would have tolled the statute of limitations.

### B.    No Properly Filed Application For Postconviction Relief Was Pending After 2016 To Prevent The One-Year AEDPA Time Limit From Expiring

Although Willard filed two 3.850 motions, one in December 2013 and one in December 2016, as well as a host of post-conviction motions between August and

June 2017, none of those motions were sufficient to toll the AEDPA clock. Moreover, even if they were, none would make the petition timely because they were either filed *after* the deadline had already expired[6] or were fully resolved more than one (1) year prior to the petition being filed.

1.    The December 2013 first amended 3.850 motion

As set forth above in the procedural history, Petitioner filed his first 3.850 motion in December 2013 and amended it on June 27, 2014, three (3) days after the time given to him by the state court to file an amendment. ECF Doc. 22-16. The state court denied the motion as untimely. ECF Doc. 22-18 at 85, 102. Petitioner filed a successive 3.850 motion on December 29, 2016. ECF Doc. 22-31 at 44. The state court also found that motion to be untimely. Because both motions were determined to be untimely, the State argues they do not toll the AEDPA clock. The State is correct.

For a post-conviction motion to toll the AEDPA timeline, it must be "properly filed." 28 U.S.C. § 2244(d)(2). To be "properly filed," the motion must be timely filed. "'[T]ime limits, no matter their form, are 'filing' conditions,' and . . . a state postconviction petition is therefore not 'properly filed' if it was rejected by the state

---

[6] Although the subsequent 3.800 motions did not re-start the AEDPA clock, they did toll the AEDPA clock from May 29, 2014 to April, 3, 2014, and again from May 15, 2014 to February 22, 2016. When considering the tolled time, only 66 days of untolled time had expired between May 3, 2013 and February 22, 2016. Thus, the undersigned calculates that Petitioner had until December 19, 2016, to file his petition (the actual date falls on a weekend). The undersigned notes that the State's calculation of expired time is incorrect because the State runs the AEDPA time from April 3, 2013, rather than May 3, 2013.

court as untimely." *Jones v. Sec'y, Fla. Dep't of Corr.*, 906 F.3d 1339, 1351 (11th Cir. 2018), *cert. denied sub nom. Jones v. Inch*, 139 S. Ct. 1384 (2019) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005)).

As to both motions, Willard argues they could not have been untimely because they raise matters concerning the trial court's lack of subject matter jurisdiction. ECF Doc. 24 at 22-23. This argument is foreclosed by Florida and federal case law. In *Carbajal v. State*, the defendant argued his 3.850 motion filed outside the two-year time limit could not be barred as untimely because it challenged the subject matter jurisdiction of the court that convicted him. The Second DCA rejected this argument and found the motion was untimely. *Carbajal v. State*, 28 So. 3d 187, 188 (Fla. Dist. Ct. App. 2010) (Fla. 2011), *aff'd Carbajal v. State*, 75 So. 3d 258, 260 (Fla. 2011); *see also, Edwards v. State*, 128 So. 3d 134, 136 (Fla. First DCA 2013) (finding that a mere claim of lack of subject matter jurisdiction did not render timely a 3.850 motion filed more than 13 years after judgment).

Federal courts also have held that the two-year limitation period from Rule 3.850 applies to claims that the circuit court lacked subject matter jurisdiction. In *Dice v. Sec'y, Fla. Dep't of Corr.*, No. 3:17-CV-1085-J-34JRK, 2020 WL 1677302, at *4 (M.D. Fla. Apr. 6, 2020), for example, the court rejected the petitioner's argument that "he can bring claims that the trial court lacked subject matter jurisdiction at any time." The court noted, in its April 6, 2020 order, that petitioner "relies solely on Florida state law and offers no federal case law to support the

contention, *see id.*, and the court independently has identified no federal case law or statutory authority supporting the proposition." *Id.*

Also, the undersigned "cannot and will not substitute its view on a question of Florida state law for the judgment of a Florida state court—especially one that has already been upheld on appeal." *Bonner v. Willis*, No. 10-21670-CIV, 2011 WL 836929, at *3 (S.D. Fla. Mar. 3, 2011) (declining to diverge from two state court findings that two-year limitation period of Rule 3.850 applied and barred defendant's untimely 3.850 claim alleging lack of jurisdiction in circuit court) (citing *Pace*, 544 U.S. at 414 ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2).") and *Carey v. Saffold*, 536 U.S. 214, 226 (2002)).

The state court determined Petitioner's first amended 3.850 motion was untimely because it was filed more than three (3) days after the deadline imposed by the court for allowing an amendment. The undersigned finds no error in that determination. *Jones*, 906 F.3d at 1349 (citing *Stafford v. Thompson*, 328 F.3d 1302, 1305 (11th Cir. 2003) (when a "state court rule[s] that the Rule 3.850 Motion was untimely . . . [the federal court is] required to defer to that ruling"); *Joseph v. State*, 157 So. 3d 546, 548 (Fla 1st DCA 2015) (holding the three additional days given for filing by Fla. R. Crim. P. 3.070 only apply "when the time period at issue runs from 'the *service* of a notice or other document on the party'") (emphasis in original). Regardless, the first amended 3.850 motion was fully resolved by November 30,

2016, when Petitioner's appeal to the Florida Supreme Court was dismissed. ECF Doc. 22-23. Thus, even if the motion had been timely filed, it would not save the petition since the petition was filed more than one (1) year after November 30, 2016.

### 2.    The December 2016 successive 3.850 motion

Willard's December 2016 successive 3.850 motion fares no better. As with the first amended 3.850 motion, the state court determined this second motion was untimely as well but for different reasons. In the motion, Petitioner argued that newly discovered evidence showed that "the judgment in this case is based on evidence which is the result of fraud, collusion, deceit, mistake, etc." ECF Doc. 22-31 at 44. Specifically, he argued he was surprised by the addition of an additional charge of fleeing and eluding added to the Information issued against him after his two cases were consolidated in 2009. He claimed the circuit court never gained personal jurisdiction over defendant for this charge because a capias was never issued for the new charge. *Id.* at 49. He argued this was newly discovered evidence because he discovered in "early 2015" that the criminal investigator had, in 2010, sent the clerk a copy of the citation upon which the new charge was based and the clerk had filed it on the docket in 2010 – but backdated to the issue date of the citation, April 8, 2009. *Id.*

Contrary to Petitioner's assertions, the state court found that there was no newly discovered evidence, noting that the Uniform Traffic Citation for Count 3 Petitioner said was not known to him until 2015 was, by Petitioner's own allegation,

introduced into the court record in 2010. *Id.* at 111-112. That being the case, the state court found the motion was untimely under Florida Rule of Criminal Procedure 3.850(b)(1) and *Johnson v. State*, 936 So. 2d 1196, 1197 (Fla. 1st DCA 2006), and ruled, alternatively, that, even if it were timely, it would not constitute a manifest injustice that would justify withdrawing the plea. ECF Doc 22-31, pp. 112-113.

The undersigned finds no error in the state court's determination that the motion was untimely. Indeed, the determination is consistent with Florida state law. *Jones*, 906 F.3d at 1349 (citing collection of cases finding 3.850 motion based on newly discovered evidence as time-barred where the "new evidence" could have been discovered within the rule's 2-year deadline). Accordingly, having already determined that a jurisdictional argument must also be made within the two-year time period under Rule 3.850, because the state court found the motion untimely under state law, "that is the end of the matter for purposes of § 2244(d)(2)." *Pace*, 544 U.S. at 417.

### 3.    The "flurry" of post-conviction motions.

Willard also filed a host of post-conviction motions from August through October 2016; however, none suffices as an "application for review" under § 2244(d). In addition to being "properly filed," to toll the AEDPA clock, a postconviction filing must directly attack the judgment or sentence because it must be "an application . . . for review with respect to the pertinent judgment or claim."

28 U.S.C. § 2244(d)(2). Motions that do not directly attack the sentence or judgment are not considered "applications for review" that toll the AEDPA time limits.

That is, to be considered an "application for review" a postconviction motion must "involve[] judicial reexamination of the sentence to determine whether a more lenient sentence is proper." *Wall v. Kholi*, 562 U.S. 545, 556 (2011). A motion to reduce sentence, for example, is considered an "application for review"; other types of motions are not. *See id.* "A motion to reduce sentence is unlike a motion for post-conviction discovery or a motion for appointment of counsel, which generally are not direct requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment." *Id.* at 556 fn. 4.

On August 11, 2016, Willard filed a Notice of Filing a Deed of Cession for Eglin Reservation from 1951 and a letter from the Air Force Department to the governor of Florida. ECF Doc. 22-31 at 14-19. This simply brought the deed to the court's attention and did not directly attack his judgment or sentence. On August 11, 2016, he filed a Request for Clarification of Resentencing (referencing the 2015 amendment). ECF Doc 22-31, p. 20. Willard asked about the outcome of a May 29, 2015 hearing and the sentence imposed and asked if the defendant or counsel was present for resentencing. Thus, this request did not directly attack his judgment or sentence.

On October 13, 2016, he filed an Affidavit of Jurisdiction and Hearing (which included an allegation on "affiant's information and belief" that the two aggravated

assault convictions could not stand because the crimes were committed on federal land).  ECF Doc. 22-31 at 22-25.  Despite this improper legal conclusion in an affidavit, the document does not directly attack petitioner's judgment or sentence.  On October 18, 2016, he filed a Demand for Specific Performance related to any "capias, summons, or other process issued . . ." concerning the fleeing and attempting to elude law enforcement charges in count 3.  ECF Doc. 22-31 at 27-38.  This motion was denied on February 20, 2017.  The court found that because Willard had entered a plea to the charge, the matter was moot.  *Id.* at 97-98.

On October 27, 2016, Willard filed a Notice of Filing and an Affidavit of Reservation of Rights related to claims attacking the court's jurisdiction over his case.  ECF Doc. 22-31 at 39-42.  This affidavit was offered as proof that he had not waived any right to object to the circuit court's jurisdiction in his plea agreement.  As such it was not a direct attack on his judgment or sentence.

Petitioner also filed several motions in 2017.  However, because all such motions were filed *after* Petitioner's deadline for filing this petition had already expired (i.e., after December 19, 2016), there was no AEDPA clock left for them to toll.  Thus, regardless of whether they were "applications for review" (which most were not), they would not have made his petition timely filed.[7]

---

[7] On January 7, 2017, Petitioner filed a Request for Compulsory Judicial Notice of Deed of Cession for Eglin Reservation and Status of Place As Military Enclave, requesting the state court to take judicial notice of the fact the Eglin Air Force Base is a federal enclave.  ECF Doc. 22-31 at 88-89.

**C.   Willard Is Not Entitled To Equitable Tolling Of The AEDPA Time Limit**

Aside from Willard's arguments that his petition is timely (rejected above), Willard's other arguments are essentially for the application of equitable tolling. Willard argues that "the ruling on Petitioner's [amended Rule 3.850] motion presented an extraordinary circumstance beyond his control in that he had two rulings issued on the same motion . . . .  Had Petitioner filed his habeas petition in this Court without pursuing the appeal, Respondent would have challenged that the issues of the motion had not been exhausted."  ECF Doc. 24 at 25.  He continues that the problem was compounded on appeal because the State received numerous extensions of time, and Willard argues that "the State knowingly employed a tactic to burn up any remaining time Petitioner had with meritless claims for extensions. This would allow the State to later rely on the ruling of timeliness when it came time for this Court to hear this Petition."  *Id.* at 26.

---

On January 20, 2017, he filed his sixth Rule 3.800(a) motion, alleging that his sentence for counts 4 and 5 was illegal because the State of Florida had no jurisdiction over a crime occurring on Eglin Reservation, which is federal land.  ECF Doc. 22-31 at 92-95.  Because the motion attacks the validity of the judgment itself, the state court correctly determined it should have been brought under 3.850 and was untimely.  On March 9, 2017, he filed a Motion for Discharge related to the trial court's February 20, 2017, order denying his Demand for Specific Performance of production of a capias, summons or other process. ECF Doc. 22-31 at 99-10.  On June 9, 2017, he filed a motion to have an affidavit of indigency that he filed in a civil case but was misfiled in the criminal case filed in Okaloosa County Circuit Court Case No. 2017-CA-798.  On June 22, 2017, he filed a Demand for Adequate Assurance of Performance (Upon Motion for Discharge), citing § 251(2), Restatement (Second) of Contracts for the proposition that his plea agreement had been materially breached.  ECF Doc. 22-31 at 102-106.

Equitable tolling is appropriate when "extraordinary circumstances have worked to prevent an otherwise diligent petitioner from timely filing his petition." *Diaz v. Sec'y, Dept. of Corr.*, 362 F.3d 698, 701 (11th Cir. 2004) (quoting *Helton v. Sec'y, Dept. of Corr.*, 259 F.3d 1310, 1312 (11th Cir. 2001) (internal quotations omitted)). This means the Petitioner must show that the untimeliness of his petition was "both beyond his control and unavoidable even with due diligence." *Johnson v. United States*, 340 F.3d 1219, 1266 (11th Cir. 2003) (§ 2255 case) (emphasis added). For equitable tolling to apply, the Eleventh Circuit requires "rare and exceptional circumstances, such as when the State's conduct prevents the petitioner from timely filing." *Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir. 2005). The petitioner seeking equitable tolling bears the burden of showing that it is warranted. *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009). Moreover, he must show a causal connection between the alleged extraordinary circumstances and the late filing of his petition. *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011).

Willard has not shown the existence of any extraordinary circumstances which prevented him from timely filing his petition. As discussed above, because Willard's fifth 3.800(a) motion was not final until February 22, 2016, he had until December 18, 2016 to file a habeas petition. Moreover, although he complains about the delay in the resolution of his 3.850 motion, he still had three-and-a-half months after the denial of his first 3.850 was affirmed by the First DCA before his AEDPA

deadline expired. Even after he moved for rehearing with the First DCA, which was denied, and sought certiorari review with the Florida Supreme Court, which was also denied, he still had eighteen (18) days to file his federal petition. ECF Doc. 22-23.

Moreover, while Petitioner points to the myriad of post-conviction motions he filed to show that he has been diligent, those motions do not show that he has been diligent in filing the petition. To the contrary, instead of expending his time on filing untimely motions, Petitioner should have exerted those efforts toward the filing of a petition, particularly after his first amended 3.850 motion was fully resolved on appeal. Moreover, rather than take the chance that his petition would be time-barred, Petitioner could have filed a protective habeas petition. "A prisoner seeking state postconviction relief might avoid [trying to exhaust state remedies only to find out that the action was not properly filed] by filing a 'protective petition in federal court and asking the federal court to stay and abey the federal habeas proceeding until state remedies are exhausted.'" *Pace*, 544 U.S. at 416 (quoting *Rhines v. Weber*, 544 U. S. 269, 278 (2005)).

## III.   CONCLUSION

### A.   An Evidentiary Hearing Is Not Warranted

The undersigned also finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v.*

*Landrigan*, 550 U.S. 465, 474 (2007).  Here, because the petition is untimely, an evidentiary hearing is not warranted.

### B.    Certificate Of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.     That the State's motion to dismiss, ECF Doc. 22, be GRANTED and

this case be DISMISSED WITH PREJUDICE as untimely.

2.     That a Certificate of Appealability be DENIED.

3.     That the clerk be directed to close the file.

At Pensacola, Florida, this 11th day of May, 2020.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.